IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| RED RIVER RESOURCES INC., ENERGYTEC INC., and COMANCHE WELL SERVICE CORP., | § § § § | |
| *Appellants/Cross-Appellees*, | § § | |
| v. | § § | Case No. 4:10-cv-00041 |
| WICKFORD, INC. and TCRG DRILLING & OPERATING, LLC, | § § § § | |
| *Appellees/Cross-Appellants*. | § | |

**MEMORANDUM OPINION AND ORDER
AFFIRMING BANKRUPTCY COURT AND
RESOLVING APPEAL FROM THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF TEXAS - SHERMAN DIVISION
(CASE NUMBER 09-41477)**

This is a bankruptcy appeal. The appellants, Red River, Energytec, and Comanche seek reversal of the bankruptcy court's December 17, 2009 decision finding that Energytec's interest in certain oil and gas leases terminated. The appellees, Wickford and TCRG, have filed cross-appeals that are relevant only if this court reverses the bankruptcy court. Having reviewed the bankruptcy court's decision and the parties' briefs, the court finds that the bankruptcy court's decision should be affirmed.

**BACKGROUND**

The disputed leases cover two pieces of property in Titus County, Texas. The properties are referred to as the Jennie Belcher Property and the Garbade Property. In 1999, Frank W. Cole acquired a lease from the owners of the minerals underlying the Belcher property. Energytec later

succeeded to Mr. Cole's interest in the Belcher property. In 2004, Energytec acquired a lease from owners of the minerals underlying the Garbade property. Energytec hired Comanche to operate the Belcher and Garbade leases.

Production on the Belcher lease ceased in March 2008 as a result of a severance order issued by the Texas Railroad Commission (RRC) for improper plugging techniques. That particular order was lifted on January 20, 2009. However, four days earlier, on January 16, 2009, the RRC issued another severance order on the Belcher lease for production imbalances. The RRC lifted the second severance order on March 25, 2009. Energytec did not resume production on the Belcher property until August 2009.

Near the end of 2008, Energytec learned that the company that had been purchasing oil from the Belcher and Garbade properties would soon cease its purchases, and on December 31, 2008, the company did indeed stop purchasing oil. The loss of a purchaser resulted in a cessation of production on the Garbade lease in February 2009. Energytec did not resume production on the Garbade property until September 2009.

In the meantime, in April 2009, one of the appellees, Wickford, acquired oil and gas leases on the Belcher and Garbade properties. Wickford contracted with the other appellee, TCRG, to operate the Belcher and Garbade leases.

Energytec and Comanche filed voluntary Chapter 11 bankruptcy petitions on May 13, 2009. Red River, as Energytec's Debtor in Possession lender, has a security interest in all of Energytec's assets, which, unless they were terminated, include the Belcher and Garbade leases. On November 18, 2009, Wickford brought an adversary proceeding in the United States Bankruptcy Court for the Eastern District of Texas (Sherman Division), arguing that Energytec's

leases terminated by virtue of the cessation of production on both properties. The bankruptcy court agreed with Wickford, and on December 17, 2009, concluded that the cessation of production on both properties terminated Energytec's leases. Red River filed an appeal on January 29, 2010. Energytec and Comanche filed an appeal on February 5, 2010. This court consolidated the appeals on February 17, 2010.

## LEGAL STANDARD

This court has jurisdiction to hear appeals from "final judgments, orders, and decrees" of a bankruptcy court. 28 U.S.C. § 158(a)(1) (2006). In general, a district court reviews a bankruptcy court's conclusions of facts for clear error and conclusions of law de novo. *In re Texas Pig Stands, Inc.*, 610 F.3d 937, 941 (5th Cir. 2010). The clear error standard is not used when the lower court applied legal principles to essentially undisputed facts. *Moore v. M/V Angela*, 353 F.3d 376, 388 (5th Cir. 2003). Because that is what happened in this case, the court will review all three matters on appeal de novo.

## DISCUSSION AND ANALYSIS

The appellants identify three issues on appeal: (1) whether the bankruptcy court erred by not giving effect to the plain terms of the Belcher and Garbade leases; (2) whether the bankruptcy court erred by finding that there was a permanent cessation of production terminating the leases; and (3) whether the bankruptcy court erred by finding that Doyle Price's action did not constitute lessor repudiation.

It is well settled under Texas law that once the primary term of an oil and gas lease has expired, the lease automatically terminates upon cessation of production. *Moore v. Jet Stream Invs., LTD*, 261 S.W.3d 412, 426 (Tex. App.—Texarkana 2008, pet. denied) (citing *Watson v.*

*Rochmill*, 155 S.W.2d 783, 784 (Tex. 1941)). This rule is often referred to as the "automatic termination rule." In this case, it is undisputed that there was a cessation of production on both leases after the primary terms of the leases had expired. The appellants' three arguments, therefore, are directed towards avoiding application of the automatic termination rule.

**1.** *Force Majeure* **Clauses**

Appellants argue that the bankruptcy court failed to give effect to certain provisions in the Belcher and Garbade leases that they claim operate to excuse the cessation of production on both leases. In particular, the Belcher lease provides that if

> [T]he performance by [Energytec] of any covenant, agreement, or requirement herein is delayed or interrupted directly or indirectly by any past or future acts, orders, regulatory requirements of the government of the United States or of any state or other governmental body or agency, officer, representative, or authority of any of them, or because of delay or inability to get materials, labor, equipment, or supplies, or on account of any other similar or dissimilar cause beyond the control of [Energytec], the period of such delay or interruption shall not be counted against [Energytec.]

Similarly, the Garbade lease provides that

> Should [Energytec] be prevented from complying with any express or implied covenant of this lease, from . . . producing any oil, gas, or other minerals therefrom by reason of scarcity of or inability to obtain or to use equipment or material, or by operation of *force majeure*, and federal or state law or any order, rule, or regulation of governmental authority, then while so prevented, [Energytec's] obligations to comply with such covenant shall be suspended, and [Energytec] shall not be liable . . . for failure to comply therewith; and this lease shall be extended while and so long as [Energytec] is prevented by any such cause from . . . producing oil and gas from the premises; and the time while [Energytec] is so prevented shall not be counted against [Energytec], anything in this lease to the contrary notwithstanding.

Courts refer to these clauses as *force majeure* clauses. *Force majeure* clauses derive from the notion that parties to a contract could be relieved of their contractual duties when performance is prevented by a *force majeure* event, an event beyond their control, such as an act of God. *Sun Operating LP*

*v. Holt*, 984 S.W.2d 277, 282-83 (Tex. App.—Amarillo 1998, pet. denied) (citing 6A Arthur L. Corbin, Corbin on Contracts §1324 (1962)). When a lessee relies on a *force majeure* clause to excuse nonperformance, the lessee bears the burden of proof to establish that a *force majeure* event occurred. *Moore*, 261 S.W.3d at 420.[1]

The appellants argue that the RRC severance orders qualify as *force majeure* events under the terms of lease. While the appellants appear to apply this argument to both the Belcher and the Garbade leases, because the RRC issued severance orders only on the Belcher lease, the appellants' argument can apply only to that lease.

The RRC has the authority to order a well shut-in due to the lessee's failure to comply with its regulations. To accomplish this, the RRC issues severance orders. A RRC severance order does not constitute a *force majeure* event when compliance with the regulation violated was within the reasonable control of the lessee. *See Hydrocarbon Mgmt., Inc. v. Tracker Exploration, Inc.*, 861 S.W.2d 427, 436-37 (Tex. App.—Amarillo 1993, no writ) (holding that RRC severance order was not a *force majeure* event because it was issued for lessee's unauthorized overproduction); *Atkinson Gas Co. v. Albrecht*, 878 S.W.2d 236, 241 (Tex. App.—Corpus Christi 1994, writ denied) (holding that RRC severance order was not a *force majeure* event because it was issued for lessee's failure to timely file production reports); *Moore*, 261 S.W.3d at 422 (holding that RRC severance order was not a *force majeure* event because it was issued for lessee's failure to post financial assurance); *Schroeder v. Snoga*, No. 04-96-00489-CV, 1997 WL 428472, at *4 (Tex. App.—San Antonio 1997, no writ) (holding that RRC

---

[1]Despite the bankruptcy court's reference to it, the diligence of the lessee in response to an alleged *force majeure* event is not an issue when deciding whether a *force majeure* clause applies. *Moore*, 261 S.W.3d at 422.

severance order was not a *force majeure* event because it was issued for lessee's unidentified violations of RRC regulations). *Cf. Frost Nat'l Bank v. Matthews*, 713 S.W.2d 365, 368 (Tex. App.—Texarkana 1986, writ ref'd n.r.e.) (holding that RRC severance order was a *force majeure* event because it was based on the conduct of a prior operator).[2] A RRC severance order, therefore, will only qualify as a force majeure event when compliance with the RRC regulation violated was outside the control of the lessee.

The reason for this rule is that "[t]he parties to an oil and gas lease are presumed to have contracted with knowledge of the law and regulations of the [RRC] concerning the production of oil and gas." *Atkinson*, 878 S.W.2d at 241. The parties are also presumed to know that the RRC has the authority to shut-in a well for violation of those laws and regulations. *Hydrocarbon*, 861 S.W.2d at 436.

Regarding the first severance order, the bankruptcy court found that the appellants "did not cause and could not control the confusion at the RRC regarding their plugging techniques or the resulting severance order." The court's conclusion is supported by the record, and this court finds no reason to question it.[3] The first order issued on the Belcher lease, therefore, does qualify as a *force majeure* event under the terms of lease, and, consequently, operates to excuse the

---

[2]In their reply brief, appellants attempt to analogize the facts of this case to that of the *Frost* case, arguing that the court should hold that the RRC severance orders were *force majeure* events, as the court held in *Frost*. However, appellants overlook the court's reasoning in *Frost*. In *Frost*, the court held that a RRC severance order was a *force majeure* event only because the order was not caused by the current operator of the lease; rather, it was caused by the regulatory violations of a *prior* operator. 713 S.W.2d at 368. Because that is not what happened in this case, *Frost* is not on point.

[3]The court finds particularly persuasive the evidence that an RRC employee had expressly approved the plugging techniques used by Comanche.

cessation of production caused by it.

In contrast, the bankruptcy court found that the second severance order issued on the Belcher lease was within the appellants' control. There is no evidence in the record to contradict the bankruptcy court's finding.[4] Moreover, the appellants have not come forth with any evidence to suggest that the second order was beyond their control. The court, therefore, finds that the appellants have failed to satisfy their burden to establish that the second order was a *force majeure* event. Consequently, the second order will not excuse the cessation of production on the Belcher lease.[5]

The appellants also assert that the loss of a purchaser on the Belcher and Garbade properties in December 2008 constitutes a *force majeure* event under the terms of lease, thereby excusing the cessation of production on both properties. However, the court finds this argument inadequately briefed by the appellants, and therefore the court did not consider it. The appellants' assertion of this argument in its initial brief to the court was limited to one short paragraph, with no legal authorities cited.[6] In its reply brief, the appellants expand the argument to four

---

[4]The bankruptcy court noted that the RRC notified the appellants about the production imbalance problem approximately one month before the second severance order was issued on January 16, 2009. This is persuasive evidence that the second order was within the control of the appellants.

[5]The bankruptcy court found that the Belcher lease terminated in March 2009. The apparent basis for this was that after the second severance order was lifted in March 25, 2009, the appellants did not resume production until approximately five months later. Because this court finds that the second severance order was within the control of the appellants, the court finds that the Belcher lease terminated on January 20, 2009, the date when the first order was lifted, and when the appellants could have resumed production were it not for the second order issued four days earlier.

[6]The issue is whether Texas courts recognize the loss of a purchaser as a *force majeure* event under oil and gas leases with *force majeure* clauses.

paragraphs, but again without legal support. Issues that are inadequately briefed on appeal are waived. *Thasher v. Amarillo Police Dept.*, 346 Fed.Appx. 991, 992-93 (5th Cir. 2009). *See also L & A Contracting Co. v. S. Concrete Servs., Inc.*, 17 F.3d 106, 113 (5th Cir. 1994) (finding that issue was not adequately briefed where no authorities were cited in one page argument). In addition, it does not appear from the record that Energytec raised this issue, i.e. the loss of a purchaser as a force majeure event, before the bankruptcy court. Issues not raised in bankruptcy court will not be considered on appeal. *In re Martin*, 222 Fed.Appx. 360, 362 (5th Cir. 2007).[7]

## 2. Temporary Cessation of Production Doctrine

Appellants also assert that the bankruptcy court erred by not applying the "temporary cessation of production" (TCOP) doctrine. As stated before, the typical oil and gas lease automatically terminates upon cessation of production after the primary term of the lease has expired. *Moore*, 261 S.W.3d at 420. To mitigate the harshness of the automatic termination rule, Texas courts developed the TCOP doctrine. *Watson v. Rochmill*, 155 S.W.2d 783, 784 (Tex. 1941). Under the doctrine, a lease will continue for a reasonable period of time, despite the cessation of production, to give the lessee an opportunity to resume production. *Id.*

For the TCOP doctrine to apply, the lessor must prove an actual cessation of production; thereafter, the burden shifts to the lessee to prove that the cessation was excused by the doctrine. *Cobb v. Natural Gas Pipeline Co. of Am.*, 897 F.2d 1307, 1309 (5th Cir. 1990). Courts often apply a two-prong test for determining whether the doctrine should apply. First, the lessee must

---

[7] Even if the court had considered this argument, that the appellants knew about the loss of their purchaser approximately one to two months in advance is persuasive evidence that the eventual cessation of production due to the loss of a purchaser was within the control of the appellants and therefore not a *force majeure* event.

prove that the cessation was "due to a sudden stoppage of the well or some mechanical breakdown of the equipment used or some mechanical breakdown of the equipments used in connection therewith, or the like"; and, second, the lessee must exercise diligence to resume production within a reasonable time. *Id.*

The appellees argue that the TCOP doctrine does not apply in this case because it is limited to "cases of mechanical failure or other unexpected, sudden stoppage of production." The Texas Supreme Court, however, has found that the doctrine is not so limited. *Ridge Oil Co., Inc. v. Guinn Invs., Inc.*, 148 S.W.3d 143, 152 (Tex. 2004). "[A]lthough decisions at times have said that the temporary cessation of production doctrine applies when there is 'sudden stoppage of the well or some mechanical breakdown of the equipment used in connection therewith' or the like,' . . . the circumstances in which this and other courts have applied the doctrine have not been so limited." *Id.* at 152.

While the TCOP doctrine's scope of application is not clearly defined, it is broader than that urged by the appellee. Further, the facts of the cases in which Texas courts have applied the doctrine suggest that its applicability is broad enough to include this case. *See, e.g. Midwest Oil Corp. v. Winsauer*, 323 S.W.2d 944 (Tex. 1959) (doctrine applied when cessation of production for 174 days was caused by two successive law suits and a subsequent obstruction in a gas line); *H.R. Casey v. W. Oil and Gas, Inc.*, 611 S.W.2d 676 (Tex. Civ. App.—Eastland 1980, writ ref'd n.r.e.) (doctrine applied when cessation of production caused by negotiation of new purchasing agreement, purchaser needed new equipment, and well equipment had been stolen); *Krabbe v. Anadarko Petroleum Corp.*, 46 S.W.3d 308 (Tex. App.—Amarillo 2001, pet. denied) (doctrine applied when cessation of production caused by litigation with purchaser).

The appellees argue that even if the TCOP doctrine is available on the Belcher lease, it does not excuse the cessation of production on that property because the appellants failed to resume production diligently. As stated previously, for the doctrine to apply the lessor must prove that he resumed production diligently and within a reasonable period of time. *Cobb*, 897 F.2d at 1309.

The bankruptcy court concluded that the appellants exercised diligence in responding to the first severance order issued by the RRC. This court finds that the record supports this conclusion.[8] In contrast, the bankruptcy court concluded that the appellants were not diligent in resuming production after the second order was issued. The record shows that the appellants waited more than three months to respond and resolve the second order when they could have done so much earlier; further, after the second order was lifted on March 25, 2009, the appellants waited approximately five months to resume production on the Belcher property.

In their brief, the appellants offer nothing more on this point than a conclusory statement that they "diligently worked to resolve" the second severance order, and that it only took them "a mere 68 days," failing to take into account the approximately five months it took them to resume production on the Belcher property after the second order was lifted. The court finds that the appellants have failed to satisfy their burden to establish that they exercised diligence in resuming production on the Belcher property. Consequently, because the appellants have not met its requirements, the TCOP doctrine will not excuse the cessation of production on the Belcher property.

---

[8] Comanche promptly filed the appropriate form with the RRC and had numerous discussions with them about the order.

Regarding the Garbade lease, the appellees argue that the TCOP doctrine cannot apply because of the following provision in that lease:

> If oil and/or gas is not produced in commercial qualities after the expiration of the term of this lease, this lease will become null and void. Commercial quantities will be construed as a production of two hundred (200) barrels in any ninety (90) day period.

The TCOP doctrine does not apply when a lease contains "a provision in the habendum clause expressing a time limitation within which continued drilling . . . must be conducted." *Holt*, 984 S.W.2d at 281-82 (citing *Samano v. Sun Oil Co.*, 621 S.W.2d 580, 581-84 (Tex. 1981)). This is because the doctrine is only appropriate when the lease fails to define what constitutes a temporary cessation of production. *Ridenour v. Herrington*, 47 S.W.3d 117, 121-22 (Tex. App.—Waco 2001, pet. denied). Because the Garbade lease contained language limiting the cessation of production to a specific time period, the doctrine does not apply, and thus it will not excuse the cessation of production on the Garbade property.[9]

**3. Lessor Repudiation**

Finally, the appellants argue that the cessation of production on both leases should be excused based on the doctrine of repudiation. Specifically, they assert that Doyle Price, the lessor on both properties, repudiated the leases when he told Energytec that he did not want them to

---

[9]In their reply brief, appellants argue that this provision is not a "savings clause," and that only a savings clause will prevent application of the TCOP doctrine. However, because the purpose of the doctrine is to permit a temporary cessation of production when such a period is not addressed in the lease, any provision in the lease, whether characterized as a "savings clause" or not, that permits a temporary cessation of production will foreclose the doctrine's application. *See Holt*, 984 S.W.2d at 281-82; *Ridenour*, 47 S.W.3d at 121-22. Because this provision in the Garbade lease does just that, i.e. the appellants could have ceased production and the lease would not have terminated as long as they produced at least 200 barrels in any ninety-day period, the doctrine is not available for the Garbade lease.

transport oil off the Garbade property.[10]

The doctrine of repudiation is an equitable doctrine akin to estoppel. *Chesapeake Exploration, LLC, v. Valence Operating Co.*, No. H-07-2565, 2008 WL 4240486, *4 (S.D.Tex. 2008). "'Repudiation of a lease by a lessor relieves the lessee from any obligation to conduct any operation on the land in order to maintain the lease . . . .'" *Id.* (quoting *Cheyenne Res., Inc. v. Criswell*, 714 S.W.2d 103, 105 (Tex. App.—Eastland 1986, no writ). Put another way, the "doctrine provides that a lessor may be estopped from asserting that a lease has terminated as a result of nonperformance when the lessor has directly contributed to that nonperformance." *Mitchell Energy Corp. v. Samson Res. Co.*, 80 F.3d 976, 982 (5th Cir. 1996).

To establish lessor repudiation, the lessor must have made a clear, unequivocal and positive challenge to the lessee's title. *Chesapeake*, 2008 WL 4240486, at *4 (citing *Atkinson*, 878 S.W.2d at 239 and *Adams v. Cannan*, 253 S.W.2d 948, 951 (Tex. Civ. App.—San Antonio 1952, no writ)). This means that the repudiation must address the title to the lease and not other interests. *Id.* (citing *Atkinson*, 878 S.W.2d at 239 (lessee who shut-in well and sent note to lessor saying "No-pay, no gas!" did not repudiate the lease because the note referenced royalty rights, not title)). Thus, the doctrine applies only when the lessor tells the lessee, that he, the lessor, is the owner of the property to the exclusion of all rights formerly held or claimed by the lessee. *City of Brady v. Bennie*, 735 S.W.2d 275, 285 (Tex. App.—Eastland 1987, no writ). *E.g. Cheyenne Res., Inc. v. Criswell*, 714 S.W.2d 103 (Tex. App.—Eastland 1986, no writ) (lessor posted a sign on the gate to leased premises notifying lessee that lease had expired); *Shell Oil Co.*

---

[10]Because Mr. Price's statement concerned the oil being hauled off the Garbade property, and not the Belcher property, the appellants' repudiation argument can only apply to the Garbade lease.

*v. Goodroe*, 197 S.W.2d 395 (Tex. Civ. App.—Texarkana 1946, writ ref'd n.r.e.) (lessors sent lessees letter stating that "the oil and gas lease formerly held by you . . . has terminated . . . . [t]herefore, this is to demand that you execute and forward to me a proper release of said oil and gas lease.").

Soon after the appellants lost a purchaser on December 31, 2009, they transported oil from the Garbade property to a storage site seventy-five miles away. Mr. Price, concerned that his portion of the oil was being taken without payment, eventually told the appellants to stop transporting oil from the Garbade property.

There is nothing in the record to indicate that Mr. Price's refusal was based on a challenge to the appellants' title to the Garbade lease. Rather, the record demonstrates that Mr. Price's refusal was solely motivated out of concern for what he believed was his royalty interest in the oil being hauled away.[11] Consequently, because Mr. Price did not challenge the appellants' title to the Garbade lease, the repudiation doctrine is not available to excuse the cessation of production on the Garbade lease.[12]

**CONCLUSION**

Based on the foregoing, the court finds that the leases' force majeure clauses, the

---

[11]Even if there were evidence that Mr. Price's refusal was based on a dispute about title to the Garbade lease, his statement falls short of the type of clear, unequivocal, and positive language required for the repudiation doctrine to apply. *See Chesapeake*, 2008 WL 4240486, at *4-5.

[12]The parties dispute the nature of Mr. Price's royalty interest in the oil transported off the Garbade property. However, because Mr. Price did not challenge the appellants' title to the lease, whether he actually owned any of the oil hauled away is a separate matter and immaterial to the issue of repudiation. The court, therefore, did not decide this issue.

temporary cessation of production doctrine, and the repudiation doctrine will not prevent application of the automatic termination rule to both leases in this case. Accordingly, the court hereby **AFFIRMS** the bankruptcy court's holding that the leases terminated.

**IT IS SO ORDERED.**

        **SIGNED this the 29th day of September, 2010.**

_____
RICHARD A. SCHELL
UNITED STATES DISTRICT JUDGE